UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

UNITED STATES OF AMERICA,

        Plaintiff,

   v.

ALLEN RAY JORDAN,

        Defendant.

NO. CR. S-96-475 FCD

MEMORANDUM AND ORDER

----oo0oo----

On October 1, 1998, defendant, Allen Ray Jordan ("defendant"), was convicted by a jury of conspiracy to manufacture methamphetamine in violation of 21 U.S.C. §§ 846 and 841(a)(1) ("Count 1"), attempt to manufacture methamphetamine in violation of 21 U.S.C. §§ 846, 841(a)(1) ("Count 2"), and maintaining a place for the manufacture of methamphetamine in violation of 21 U.S.C. § 856 ("Count 3"). On April 11, 2000, the court sentenced defendant to a term of life imprisonment.

1

1 Defendant appealed, and the Ninth Circuit remanded the case for
2 resentencing in light of Apprendi v. New Jersey, 530 U.S. 466
3 (2000). United States v. Jordan, 291 F.3d 1091 (9th Cir. 2002).
4     On January 13, 2003, the court resentenced defendant to 240
5 months for Count 1, and 60 months for both Counts 2 and 3, to run
6 consecutively for a total aggregate sentence of 360 months.
7 Defendant again appealed, and the case was remanded for further
8 consideration in light of Booker v. United States, 125 S. Ct. 738
9 (2005). This court scheduled a status conference for May 31,
10 2005 and requested that counsel for the government and defendant
11 file memoranda identifying the issues raised on remand.
12     Defendant now asserts that he has served in excess of the
13 maximum sentence allowed under Booker, which held that the
14 Guidelines Issued by the United States Sentencing Guidelines
15 ("Guidelines") violated the Sixth Amendment to the United States
16 Constitution by establishing a mandatory system that increased
17 the length of a sentence based on factual findings made by a
18 judge, not a jury. Booker concluded that, under the mandatory
19 Guidelines, "any fact (other than a prior conviction) which is
20 necessary to support a sentence exceeding the maximum authorized
21 by the facts established by a plea of guilty or a jury verdict,
22 must be admitted by the defendant or proved to a jury beyond a
23 reasonable doubt." Id. at 756. According to defendant, after
24 Booker, the maximum lawful offense under the mandatory Guidelines
25 regime in effect when defendant's crimes were committed was 54
26 months. As of May 15, 2005, defendant has been in custody for
27 105 months. Thus, he argues that he has served in excess of the
28 maximum sentence and should be released.

1   The government responds that the remedial portion of the
2   <u>Booker</u> decision invalidated the sections of the Sentencing Reform
3   Act which made the Guidelines mandatory, and held that the
4   sentencing court has discretion, informed by the Guidelines, to
5   impose any sentence within the statutory maximum penalty for the
6   offense of conviction.  <u>Id.</u> at 756.  Thus, the government
7   concludes, under the remedial <u>Booker</u> decision, defendant can be
8   sentenced to any term up to the statutory maximum, which in this
9   case is 20 years for each offense.  (Gov't's Sentencing Mem. Post
10  <u>Booker</u> at 6.)
11      However, according to defendant, the "remedial" portion of
12  the <u>Booker</u> decision "cannot be applied to [defendant] because of
13  the prohibition against Ex Post Facto laws in Article I, section
14  9, clause 3 of the United States Constitution."  (Def.'s Mem. of
15  Issues on Resentencing filed March 2, 2005 at 3.)  Thus, the
16  question before the court is whether the remedial portion of the
17  <u>Booker</u> decision can lawfully be applied to defendant.
18      The court held a status conference and heard argument from
19  counsel on June 6, 2005.

**DISCUSSION**

21      The Ex Post Facto Clause of the United States Constitution
22  provides that "no state shall . . . pass any . . . ex post facto
23  law."  U.S. Const. art. I, § 10, cl. 1.  By its express terms,
24  the Ex Post Facto Clause limits the power of the legislature to
25  enact laws, not the power of the courts to interpret the law.
26  <u>Frank v. Mangum</u>, 237 U.S. 309, 333-334 (1915)("as its terms
27  indicate, [the Ex Post Facto Clause] is directed against
28  legislative action only, and does not reach erroneous or

3

inconsistent decisions by the courts.")(citations omitted); Ross v. Oregon, 227 U.S. 150, 161-162 (1913)(same).

However, the principle on which the Ex Post Facto Clause is based – that persons have a right to fair warning of that conduct which will give rise to criminal penalties – is "fundamental to our concept of constitutional liberty." Marks v. United States, 430 U.S. 188, 191-192 (1977)(citations omitted). Thus, to a limited extent, the Supreme Court applies ex post facto principles to retroactive judicial decisions.

In Bouie v. City of Columbia, 378 U.S. 347 (1964), the defendants were convicted of criminal trespass after they refused to leave a department store luncheon counter during a "sit in" protest of the store's policy against serving African American customers. Id. at 348. The statute under which the defendants were convicted defined the prohibited conduct as "entry upon the lands of another . . . after notice from the owner or tenant prohibiting such entry." Id. at 349-350. The South Carolina Supreme Court affirmed the convictions, "construing the statute to cover not only the act of entry . . . but also the act of remaining on the premises of another after receiving notice to leave." Id. at 350. On certiorari, the Supreme Court reversed, finding that the defendants' convictions rested on an unexpected construction of the state trespass statute by the State Supreme Court which expanded the type of conduct sanctioned under the statute. The Court concluded that:

> [A]n unforeseeable judicial enlargement of a criminal statute, applied retroactively, operates precisely like an ex post facto law, such as Art. I, s 10, of the Constitution forbids.. . . If a state legislature is barred by the Ex Post Facto Clause from passing such a

4

      law, it must follow that a State Supreme Court is barred by the Due Process Clause from achieving precisely the same result by judicial construction.

Id. at 353-354.

The Supreme Court subsequently clarified the analysis to be applied to retroactive judicial decisions in Rogers v. Tennessee, 532 U.S. 451 (2001). In Rogers, the defendant appealed his second-degree murder conviction on the ground that the victim had died more than a year and a day after defendant had stabbed him – in violation of the common-law "year-and-a-day" rule. The Tennessee Supreme Court affirmed defendant's conviction, abolishing the "year-and-a-day" rule and applying its decision retroactively to defendant's case. The Supreme Court affirmed, holding that judicial abrogation of the "year-and-a-day" rule was not unexpected or indefensible and thus could be applied retroactively without offending the fair warning principles of the Due Process Clause. The Rogers Court explained that, "[t]o the extent petitioner argues that the Due Process Clause incorporates the specific prohibitions of the Ex Post Facto Clause as identified in Calder, petitioner misreads Bouie."[1]  Id.

---

[1] As described by the court in Calder, the categories of prohibited Ex Post Facto laws are:

    "1st. Every law that makes an action, done before the passing of the law, and which was innocent when done, criminal; and punishes such action. 2nd. Every law that aggravates a crime, or makes it greater than it was, when committed. 3rd. Every law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed. 4th. Every law that alters the legal rules of evidence, and receives less, or different, testimony, than the law required at the time of the commission of the offence, in order to convict the offender. All these, and
(continued...)

at 458.  While recognizing that <u>Bouie</u> contains "some expansive language that is suggestive of the broad interpretation for which petitioner argues," the Court reasoned that such language was dicta, as the <u>Bouie</u> decision rested soundly on well established notions of due process.  Thus, the court concluded, the limitation on retroactive judicial decisions is not coextensive with the Ex Post Facto Clause, and the specific categories of prohibited legislation outlined in <u>Calder</u> are not incorporated "jot-for-jot" into due process limitations on judicial decisions.  <u>Id.</u> at 459 (finding that "incorporation of the <u>Calder</u> categories . . . would place an unworkable and unacceptable restraint on normal judicial processes and would be incompatible with the resolution of uncertainty that marks any evolving legal system").[2]

Instead, the <u>Rogers</u> Court held that retroactive application of a judicial interpretation of a criminal statute or alteration of a common law doctrine of criminal law violates due process where the decision is "unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue."  <u>Id.</u> at 461 (quoting <u>Bouie</u>, 378 U.S. at 354).  Thus the question presented here is whether application of the <u>Booker</u> decision to defendant would be "unexpected and indefensible by

---

[1](...continued)
similar laws, are manifestly unjust and oppressive."  <u>Calder v. Bull</u>, 3 U.S. 386, 390-391 (1798).

[2] Defendant repeatedly urges this court to apply <u>Calder</u> and other Ex Post Facto Clause cases here.  <u>Rogers</u> clearly holds that such cases, while informed by the same principles, are not directly applicable to retroactive judicial decisions.  Rather, <u>Rogers</u> itself provides the applicable analytical framework.

1  reference to the law which had been expressed prior to the
2  conduct in issue."[3]  Id.
3       The Eleventh Circuit recently addressed the precise issue
4  presented here in United States v. Duncan, 400 F.3d 1297 (11th
5  Cir. 2005).[4]  In that case, the defendant was convicted by a jury
6  of conspiracy to distribute and to possess with intent to
7  distribute cocaine and cocaine base.  The jury also returned a
8  special verdict in which it found that the conspiracy involved
9  5 kilograms or more of cocaine but found that the government had
10 failed to prove beyond a reasonable doubt that the conspiracy
11 involved 50 or more kilograms of cocaine base.  Based solely on
12 the special verdict, the defendant's base offense level would
13 have been 32.  However, applying the Guidelines, the district
14 court calculated the defendant's base offense level at 38 by
15 finding that a portion of the cocaine powder had been converted
16 into 12.24 kilograms of cocaine base, or crack.  Defendant was
17 sentenced to life in prison, and he timely appealed on various
18 grounds.
19      While his appeal was pending the Supreme Court issued
20 decisions in Blakely v. Washington, 124 S. Ct. 2531 (2004) and

---

[3] Defendant's argument that judicial decisions apply retroactively only if the change in the law is beneficial to the defendant is unsupportable.  There is no such per se rule.  To the contrary, the Supreme Court has upheld retroactive application of judicial decisions adverse to a criminal defendant so long as the defendant had fair notice of the criminal penalty at the time the crime was committed. See Rogers, 532 U.S. at 461 (affirming retroactive application of judicial decision abrogating year-and-a-day rule to criminal defendant who had fair notice of change in law).

[4] See also United States v. Gray, 362 F. Supp. 2d 714 (S.D. W. Va. 2005).

7

1 Booker. After supplemental briefing, the court issued a decision
2 applying Booker. Initially the court found that, because the
3 defendant did not raise a Sixth Amendment argument with the
4 district court, the conviction and sentence would be reviewed for
5 plain error. The court then concluded that no plain error
6 occurred because the same sentence enhancements made by the
7 district court under a mandatory Guidelines system are
8 permissible in the post-Booker non-mandatory Guidelines system.
9 Id. at 1302-1304. As a result, the error did not substantially
10 affect the defendant's rights.

11     Before concluding, the court addressed the defendant's
12 "creative argument" that the remedial portion of Booker, which
13 invalidated the sections of the Sentencing Reform Act which made
14 the Guidelines mandatory, could not be applied to the defendant
15 based on ex post facto principles. The court rejected this
16 argument, finding defendant had ample notice of the consequences
17 of his crime:

> At the time Duncan committed his offense, 1999-2002,
> the U.S. Code informed Duncan that if a jury convicted
> him of possessing at least 5 kilograms of cocaine
> powder, he was subject to a sentence of life
> imprisonment. See 21 U.S.C. § 841(b)(1)(A)(ii)(I). The
> Guidelines at the time also informed Duncan that a
> judge would engage in fact-finding to determine his
> sentence and could impose up to a sentence of life
> imprisonment. 18 U.S.C. § 3551 et seq. Duncan,
> therefore, had ample warning at the time he committed
> his crime that life imprisonment was a potential
> consequence of his actions. Applying the principles
> announced in Rogers, Duncan's due process rights cannot
> be said to have been violated.

26 Id. at 1307.

27     The court analogized the defendant's ex post facto argument
28 to one rejected by the Supreme Court in Dobbert v. Florida. In

8

that case, the defendant committed a series of murders in Florida. After the murders, the Florida death penalty statutes were held unconstitutional. However, Florida promptly enacted a new death penalty statute under which the defendant was tried, convicted, and sentenced to death. On appeal, the defendant argued that applying the death penalty statute to him violated ex post facto principles because, at the time of his crimes, no valid death penalty statute was on the books. The Supreme Court rejected this "sophistic argument" concluding that the prior death penalty statute, whether or not constitutionally valid, "provided fair warning as to the degree of culpability to which the State ascribed to the act of murder." Id. (quoting Dobbert, 432 U.S. at 297.) The Duncan court noted that the United States Code, which established maximum sentences, similarly provided the defendant with fair warning, at the time he committed his crime, of the maximum penalty for his conduct. That the Guidelines were invalidated *after his crime was committed* did not obviate this notice.

Defendant contends that Duncan is not persuasive because the case involved review for plain error, where here the appropriate standard is harmless error. However, the standard of review applied to review the district court's sentencing decision does not diminish the persuasive value of the court's reasoning on the *separate* due process question: Whether the remedial portion of Booker can be applied retroactively.[5]

---

[5] Defendant also contends that the court should disregard Duncan because the Eleventh Circuit misapplied Booker, and (continued...)

9

In light of the above, the court concludes that application of the remedial portion of <u>Booker</u> to defendant's conviction does not violate the Due Process Clause of the Fifth Amendment because the decision is not "unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue." <u>Id.</u> at 461 (quoting <u>Bouie</u>, 378 U.S. at 354).  At the time defendant committed his offenses (1995-1996), the United States Code informed defendant that, if a jury convicted him of conspiring to manufacture methamphetamine, he was subject to a sentence of 20 years imprisonment on each count.  <u>See</u> 21 U.S.C. § 841(b)(1)(C).  The Guidelines then in effect also informed defendant that a judge would engage in fact-finding to determine his sentence.  <u>See</u> 18 U.S.C. § 3553, et seq.  Thus, defendant had ample warning at the time he committed his crime that 20-years imprisonment on each count was the potential consequence of his actions.  As a result, a potential sentence of up to 20 years is not "unexpected and indefensible" by reference to the law as expressed prior to the conduct at issue.

/////
/////
/////
/////

---

[5](...continued)
ignored the requirements set forth in <u>Jones v. United States</u>, 526 U.S. 227 (1999), and <u>Apprendi</u>, <u>supra</u>, that drug quantities must be set forth in the indictment and found by a jury beyond a reasonable doubt.  However, even if the Eleventh Circuit erred in concluding that the district court did not commit plain error in sentencing, this does not undermine the separate analysis of the due process issue, which is the sole question currently before this court.

10

**CONCLUSION**

For the reasons stated above, the court concludes (1) that the Booker decision, in its entirety, applies to defendant's resentence on remand, (2) that such application does not offend the Due Process Clause of the Fifth Amendment, and (3) that defendant's request for immediate release is DENIED.

IT IS SO ORDERED.

DATED: June 8, 2005.

/s/ Frank C. Damrell Jr.
FRANK C. DAMRELL, Jr.
UNITED STATES DISTRICT JUDGE